LAWRENCE F. KEHOE, Respondent, v. MOTORISTS MUTUAL INSURANCE COMPANY, Appellant.

Third Department, February 20, 1964.

*Murphy, Aldrich, Guy, Broderick & Simon* (*William E. Noonan* of counsel), for appellant.

*Carter & Conboy* (*Clayton T. Bardwell* of counsel), for respondent.

REYNOLDS, J. Appeal from an order and judgment of the Supreme Court, Albany County, after a trial by jury, in an action brought pursuant to section 167 of the Insurance Law.

Prior to commencement of this action respondent secured a judgment for property damages resulting from an automobile collision occurring on April 19, 1953 against William Rolf, the owner of the vehicle, and Fred Rolf, its operator. In the present action respondent seeks to charge appellant with the amount of the judgment, pursuant to section 167 of the Insurance Law. Appellant contends that the Rolfs breached the condition of the policy requiring co-operation in the preparation, settlement and defense of the lawsuit. The jury has found that the appellant did not sustain the burden of proving such a breach and appellant appeals from an order denying its motion to set aside the verdict pursuant to section 549 of the Civil Practice Act and from the consequent judgment against it.

The First Department in *Wallace* v. *Universal Ins.* (18 A D 2d 121, 122–124) adopted what we believe to be the correct approach in cases of this nature. Presiding Justice BOTEIN writing for a unanimous court there stated:

" The core question raised by the record is whether defendant made adequately appropriate efforts that in the circumstances could have been reasonably contemplated to locate Floyd had he been available. The insurer's responsibility in this regard has received frequent recognition. As stated in *Imperiali* v. *Pica* (338 Mass. 494, 498), ' an insurer cannot be relieved of liability because of an alleged breach of a cooperation clause by the insured in a situation where it has not itself exercised diligence and good faith. * * * Elementary principles of justice and fair dealing require such a rule. The obligations under a cooperation clause are reciprocal. The insured must cooperate; but the insurer is under a duty to exercise diligence and good faith in bringing that about' (and see *Shalita* v. *American Motorists Ins. Co.*, 266 App. Div. 131, motion for leave to appeal denied 291 N. Y. 831 [where the parties stipulated that the insurer had made ' Every reasonable effort possible ' to locate its insured] * * *.

" In measuring the insurer's obligation of diligence the co-operation clause must be read with an eye to the purpose of the instrument containing it. Floyd's policy was issued in 1958. By that time the exigencies of persons injured by financially irresponsible motorists had found reflection in a compulsory

insurance law (the Motor Vehicle Financial Security Act) pursuant to a legislative determination that ' it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them ' (Vehicle and Traffic Law, § 310, in effect as § 93 when Floyd's policy was issued).

" To be sure, the Financial Security Act did not impose an absolute liability in favor of the injured person. Subject to section 167 (subd. 1, par. [b]) of the Insurance Law, the insurer was still permitted to condition its liability upon the insured's compliance with the terms of the policy (see *National Grange Mut. Liab. Co.* v. *Fino,* 13 A D 2d 10; *General Acc. Fire & Life Assur. Corp.* v. *Martino,* 12 Misc 2d 935; 11NYCRR 60.3 [e], [f]; cf. Vehicle and Traffic Law, § 311, subd. 4 with § 345, subd. [i], par. [1]), leaving what has been called ' a gap in the statute ' (*Teeter* v. *Allstate Ins. Co.,* 9 A D 2d 176, 184, affd. 9 N Y 2d 655), to which the Legislature later directed corrective attention not applicable to this case (see Insurance Law, § 167, subd. 2-a; art. 17-A). But surely, also, the insurer's responsibility under the co-operation clause must be viewed in the frame of the State's emphasized solicitude for the victims of automobile accidents (cf. *Lauritano* v. *American Fed. Fire Ins. Co.,* 3 A D 2d 564, 567–568, affd. 4 N Y 2d 1028). Such an emerging responsibility blends with the general legislative purpose, as well as with the anticipations of insurers entirely aware of that purpose; and, we may add, in no wise trespasses on the authority of *Coleman* v. *New Amsterdam Cas. Co.* (247 N. Y. 271, *supra*) Circuit Judge SOBELOFF has phrased the matter well: ' The problem of non-cooperation has a dual aspect; not only what the assured failed to do, but what the insurer on its part did to secure co-operation from an apathetic, inattentive, or vanished policy holder, must be considered. Liability insurance is intended not only to indemnify the assured, but also to protect members of the public who may be injured through negligence. Indeed, such insurance is made mandatory in many states. It would greatly weaken the practical usefulness of policies designed to afford public protection, if it were enough to show mere disappearance of the assured without full proof of proper efforts by the insurer to locate him.' (*Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.* v. *Owens,* 238 F. 2d 549, 550–551.) "

Here the record reveals that although the accident occurred in 1953, the case was not reached for trial until the September 1960 Term of Supreme Court. There is no indication of any

lack of co-operation during the processing and investigation of the claim or at any time prior to September, 1960. The record also reveals that until August 23, 1960 appellant made no effort to locate its assureds. When appellant finally located William Rolf in Chardon, Ohio, he appeared co-operative and gave appellant the address of his brother Fred. When personally contacted by a representative of the company, two days before the September 28, 1960 trial date, William Rolf indicated a willingness to drive to Troy, New York to be present at the trial. The company representatives then told Rolf to proceed to Troy " if he heard nothing further from " the company, but it is admitted the representative did not indicate how long he should wait before starting his trip from Ohio to New York. Also while there is testimony that the company agreed to pay William Rolf's expenses, no immediate expense money was tendered and there is some suggestion that only car fare may have been offered. In any event William Rolf did not appear on September 28, 1960 and the case was placed on the Deferred Calendar. On October 12, 1960 Fred Rolf, a " wildcat trucker ", was located and he also appears to have indicated he would co-operate. On April 11, 1961 appellant was informed that the case had been set down for trial on April 24, 1961, and on April 18, 1961 it sent certified letters to both of its assureds so notifying them. Both letters were returned undelivered. Appellant also dispatched an employee to Fred Rolf's last-known address without success. At this point all efforts to locate the assureds ceased. No efforts were made to go to William Rolf's home or to ascertain his forwarding address from postal officials or to reach Fred Rolf through, or otherwise to communicate with Fred Rolf's estranged wife, who had been a passenger in the car, whose name and two telephone numbers had been given to defendant by Fred Rolf, with the assurance that she would co-operate; nor did defendant attempt to reach Fred Rolf through his friend Cremens, whose name he had given to defendant for that purpose with his residence and business address and information as to reaching him at his place of employment. When neither of the Rolfs appeared on April 24, 1961, appellant withdrew from the action and asserted a disclaimer. Appellant claims that the assureds' failure to appear when requested and to notify the company when they changed addresses amounted to a breach of the co-operation clause. The record, however, also reveals evidence that the assureds' failure to appear may have been due, in part at least, to the appellant's failure to secure co-operation. The resolution of this issue was properly submitted to the jury (*Seltzer* v. *Indemnity Ins. Co.*,

252 N. Y. 330) and on the instant record its determination must be sustained.

The order and judgment should be affirmed, with costs.

GIBSON, P. J., HERLIHY, TAYLOR and AULISI, JJ., concur.

Judgment and order affirmed, with costs to respondent.